UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHINYERE U. NWOKE )<br>)<br>Plaintiff, )<br>)<br>) CIVIL ACTION<br>)<br>v. )<br>) NO._____<br>)<br>THE UNIVERSITY OF CHICAGO MEDICAL ) **JURY TRIAL DEMANDED**<br>CENTER a/k/a THE UNIVERSITY OF CHICAGO )<br>HOSPITALS AND HEALTH SYSTEM )<br>)<br>Defendant. | |

**COMPLAINT OF EMPLOYMENT DISCRIMINATION BASED ON
RACE; RETALIATION FOR ENGAGING IN A PROTECTED ACTIVITY; AND
VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

NOW COMES the Plaintiff CHINYERE U. NWOKE, by and through her attorneys, EBERE N. EKECHUKWU & ASSOCIATES, P.C., and files this her Complaint against Defendants, THE UNIVERSITY OF CHICAGO MEDICAL CENTER a/k/a THE UNIVERSITY OF CHICAGO HOPSPITALS AND HEALTH SYSTEM and for her cause submits the following matters and facts:

## INTRODUCTION

1. This is an action for damages for employment discrimination based on race, retaliation for engaging in a protected activity, and violation of the Family and Medical Leave Act committed by Defendants.

2. Plaintiff brings this employment discrimination action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), 2000e-5(g), for damages compensating her for economic losses and other damages caused by Defendant's unlawful employment practices committed against Plaintiff due to Plaintiff's race.

3. Plaintiff also brings this retaliation action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), for damages caused by Defendant's retaliatory actions against Plaintiff for speaking out against Defendant's racially motivated programs and practices, a protected activity.

4. Furthermore, Plaintiff brings this retaliation action pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a), for damages compensating her for economic losses and other damages caused by Defendant's interference with her FMLA rights.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(2).

## VENUE

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides in Cook County, a county in this District and Division, and the claims asserted in this Complaint arose in this District and Division.

## THE PARTIES

7. The Plaintiff, CHINEYRE U. NWOKE, was a resident of Will County, Illinois during her time of employment with Defendant, and continues to reside in Will County now.

8. Plaintiff was employed with Defendant from November 7, 2011 until September 21, 2016.

9. At all times relevant to this action, Plaintiff was an employee of Defendant within the meaning of 29 U.S.C. § 2611(2)(A).

10. The Defendant, THE UNIVERSITY OF CHICAGO MEDICAL CENTER, is a private medical center incorporated in Illinois, whose street address is 5815 South Maryland

Avenue, Chicago, Illinois, 60640. Defendant's business consists of over 500 employees and provides medical care to patients within the State of Illinois.

11. At all times relevant to this action, Defendant was an employer of Plaintiff within the meaning of 29 U.S.C. § 2611(2)(A).

## STATEMENT OF FACTS

12. Plaintiff was hired by Defendant on or about November 7, 2011 and began work for Defendant on or about the same November 7, 2011.

13. Plaintiff's employment with Defendant was mutually beneficial to the parties between the time of her hiring and March 2015. Before that time, Plaintiff received multiple commendations and was described as an asset to Defendant's staff by her supervisor, Tracy Pietrzyk.

14. In March 2015, an unnamed coworker made allegations against Plaintiff to her supervisor that proved untrue. Plaintiff handled everything professionally and courteously, and her supervisor noted it and complimented her.

15. Work continued without incident for two months, but in May 2015, Plaintiff's supervisor suddenly placed Plaintiff on a Performance Improvement Plan, or PIP, for failing to open up a surge unit against protocol.

16. Plaintiff was chastised for having poor leadership, though two of her peers, neither of them African-American, failed to open surge units under the same circumstances Plaintiff did not open a surge unit, and were not disciplined.

17. From the time she was placed on PIP, Plaintiff made note of obvious issues with two of Defendant's buildings that house patients: Mitchell and the Center for Care and Discovery (CCD).

18. The Center for Care and Discovery houses primarily white patients and Mitchell houses primarily black patients. Plaintiff complained numerous times about the poor conditions of Mitchell, which included mice and roaches roaming the halls, and a shortage of pumps and equipment supplies.

19. On June 8, 2015, Plaintiff was forced to go through the orientation process for new employees again. Her supervisor told her it was because she complained too much about the conditions at Mitchell, transferred white patients into Mitchell and black patients into CCD, and had poor performance.

20. Plaintiff was scheduled to meet with her supervisor bi-weekly to monitor progress on her PIP, but was subjected to far more meetings where she was repeatedly chastised and criticized for poor performance. Plaintiff was repeatedly asked if she was scared at the meetings.

21. Plaintiff's PIP ended abruptly in September 2015, but the meetings continued with increasing frequency and no explanation for why they were taking place. She offered to write out explanations for her performance, but was told not to because the meetings were confidential.

22. On October 17, 2015, Plaintiff took her grievances against her supervisor and other staff to Defendant's Human Resources director, Christopher William Hargeaves. He asked her to "talk offline" rather than by email, and she was told there was no racial discrimination because she was not the only black employee. She was also told to "be obedient and attend all the meetings."

23. On October 26, 2015, Plaintiff was called in to a meeting with her supervisor, and executives Emily Lowder and Corrin Steinhauer. Besides Plaintiff, all three women were white. She was accused of not discharging a patient on October 11, 2015.

24. Plaintiff explained that the patient had refused to be discharged, and that Michele Akerman, a white Hospital Operations Administrator, had the same issue with another patient on the same day.

25. Plaintiff followed the same procedure Ms. Akerman did in trying to get her discharged patient to leave, but was the only Hospital Operations Administrator subsequently called to a meeting for failing to discharge her patient.

26. Plaintiff was chastised again for poor performance in this meeting.

27. Plaintiff was called into meetings with increasing frequency. Hospital Operations Administrator meetings were originally not mandatory, but were suddenly made mandatory and scheduled with very little notice to Plaintiff.

28. Hospital Operations Administrators were also now required to attend additional meetings with Bed Access staff, who were also suddenly required to have more frequent, mandatory meetings.

29. The extra meetings had the effect of putting considerable strain on Plaintiff's time, which affected her performance of her job duties and subjected her to more meetings. Between May 11, 2015 and December 31, 2015, Plaintiff was made to attend 141 meetings. Of those, 20 were formally scheduled with proper notice.

30. On October 31, 2015, Plaintiff, unable to find any reprieve from her supervisor or HR, complained of systemic racial discrimination directly to Sharon Okeefe, the CEO, and Kenneth Polonsky, Dean of Medical Affairs. Neither of them responded to her emails. At

this time, other black managers complained about similar working conditions Plaintiff faced every day.

31. Plaintiff's supervisor continued to claim that Plaintiff's performance was poor. On November 4, 2015, her supervisor made the same claims and, noting Plaintiff's shaken and tearful demeanor, asked if she was scared again.

32. Plaintiff sought to write down explanations for her decisions and actions, but her supervisor continued to interrupt her during the day and scheduled a mandatory meeting.

33. Plaintiff attempted to dial in to the meeting, but found that she could not because the dialing number and login number had both been changed suddenly. Plaintiff was punished for dialing in late.

34. On November 17, 2015, Plaintiff's supervisor issued her a final written warning letter and asked whether Plaintiff was going to quit. When Plaintiff accused her supervisor of treating her differently, her supervisor said that it was her right to choose how she handled each Hospital Operations Administrator situation.

35. Sensing no end to the conflict at her work, Plaintiff hired an attorney on December 14, 2015 who wrote a letter to Defendant outlining the pattern of abuse against Plaintiff by Defendant's employees.

36. Sometime after the letter was sent, Defendant's CNO, Debi Albert, revised the Plaintiff's job description to include responsibilities Plaintiff was repeatedly told she did poorly in January 2016.

37. On January 5, 2016, Plaintiff was told not to put so many things in email.

38. Plaintiff had also been repeatedly locked out of her office over the course of 2015, but did not complain about it until February 4, 2016. She believed Ms. Akerman, a fellow

6

nurse who is white, locked her out because Ms. Akerman requested that the locks to get into the office be changed, but did not list Plaintiff's name as one who should be able to still access the office.

39. As a result of the stress of constant meetings, discipline, and false allegations, Plaintiff became severely emotionally distressed, and then physically compromised. Plaintiff became unable to sleep, and at one point went five days without sleep. She required tranquilizers, but received no response to her request from her doctor who works for Defendant.

40. Beginning in March 2016, Plaintiff frequented Defendant's emergency room and clinics with abdominal pain, headaches, and chest pains. None of the treatments prescribed at Defendant's facilities worked.

41. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 10, 2016, in compliance with § 706(b) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(b)), charging Defendant with acts of discrimination and retaliation.

42. The EEOC issued a *Notice of Right to Sue*, which was received by Plaintiff on August 23, 2016, because the District Director determined that it would take more than 180 days for the EEOC to complete its administrative processing of Plaintiff's charge. A copy of the *Notice of Right to Sue* is attached as Exhibit A.

43. On June 16, 2016, Plaintiff's health deteriorated to the point that she was admitted to the hospital for treatment. She was incapacitated and unable to work until June 20, 2016.

44. On the morning she returned to work, Plaintiff informed her supervisor that she would be requesting FMLA so she could take off work with impunity so she could take care of herself.

45. The next morning, before she could request her FMLA, her supervisor and Thomas Lloyd, Defendant's new Human Resources Director scheduled three impromptu meetings and accused her of poor performance earlier in the month.

46. Plaintiff explained that she was too sick to attend the meetings, but they insisted that she attend. When Plaintiff requested that her attorney be present, her supervisor and Mr. Lloyd said that Defendant had a right to meet with its employees without an attorney present. They did not let her go until it became clear that Plaintiff needed to go to the ER again.

47. On July 1, 2016 and during Plaintiff's approved FMLA, Mr. Lloyd called and emailed Plaintiff several times requesting another meeting. Plaintiff's complaint about the number of meetings she was required to attend resulted in more requests for more meetings, despite having already gone to the EEOC in June, 2016.

48. Plaintiff complained to the Vice President of Human Resources, Bob Hanley, but he failed to respond to her emails.

49. Because of the continuing discrimination, harassment, and retaliation against her, Plaintiff suffered severe emotional and physical distress. She was placed on medical leave to treat her conditions on or about July 10, 2016, and was scheduled to return to work on September 1, 2016.

50. On July 11, 2016, after treatments received at Defendant's facilities did not help, Plaintiff went to Edward Hospital and was diagnosed with severe depression and anxiety, PTSD, and OCD. She was advised to take care or else she could become psychotic.

51. All of these ailments were a result of the high stress and poor working conditions fostered by Plaintiff's supervisors and others at Defendant's facilities.

52. Plaintiff was subsequently admitted to the Linden Oaks Partial Hospitalization Program to treat her depression and anxiety. She attended one week of depression therapy and four weeks of anxiety therapy. She was released and instructed to attend sessions biweekly for continued therapy. During this time, she went on leave from work and was scheduled to return on September 1, 2016.

53. On August 30, 2016, Mr. Lloyd informed her that she would have to attend a meeting when returned from work to discuss an incident that occurred on June 2, 2016.

54. Plaintiff, despite her many ailments, was cleared to return to work by her primary care physician.

55. Plaintiff returned to work on September 21, 2016, and was promptly called in by the Director of Human Resources for a meeting to discuss an incident that occurred on June 2, 2016.

56. During this meeting, he advised Plaintiff that a colleague had claimed that Plaintiff refused to answer calls or pages on the day in question.

57. Plaintiff denied the allegations, calling them false, and the Director of Human Resources then told her she should not come into work anymore.

58. Plaintiff was subsequently escorted by security out past all her colleagues and subjected to further humiliation.

59. Plaintiff is still severely ill. She suffers from chronic chest pains, severe headaches, blurred vision, dizziness, back and shoulder pain, palpitations, depression, Post-Traumatic Stress Disorder (PTSD), and a medley of other conditions. She is under the care of a cardiologist, a gastroenterologist, psychiatrists, and a primary care physician, and is on several different medications. The deterioration of her health is due to the discriminatory, retaliatory, and egregious treatment she has received from Defendant and Defendant's agents.

## COUNT ONE

### (Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000e. et seq.)

60. The foregoing paragraphs are re-alleged and incorporated herein by reference.

61. Defendant's conduct as described at length herein constitutes discrimination based on race in violation of Title VII. Defendant subjected Plaintiff to various meetings and forms of discipline for poor performance and poor judgment, but Plaintiff's actions were the same as her white colleagues. Defendant's reasons for its conduct were not true reasons, but instead were used to hide Defendant's discriminatory practices.

## COUNT TWO

### (Retaliation for Engaging in Protected Activities)

62. The foregoing paragraphs are re-alleged and incorporated herein by reference.

63. Defendant's conduct as described at length herein constitutes retaliation against Plaintiff because she engaged in activities protected by Title VII. Defendant's reasons for its

conduct were not the true reasons, but instead were used to hide Defendant's retaliatory practices.

## COUNT THREE

### (Violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a).)

64. The foregoing paragraphs are re-alleged and incorporated herein by reference.

65. Defendant's conduct as described at length herein constitutes an interference with Plaintiff's lawful rights under the FMLA, and thus is a violation of the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Honorable Court grant the following relief:

(a) declare Defendant's acts and practices against Plaintiff, as described herein, a violation of Title VII of the Civil Rights Act of 1964;

(b) declare Defendant's act and practices against Plaintiff, as described herein, a violation of the Family Leave and Medical Act of 1993;

(c) compensatory, consequential, and punitive damages and any other damages suffered because of the discrimination, retaliation, and interference with FMLA rights;

(d) lost wages and benefits due to Defendant's violation of Title VII of the Civil Rights Acts of 1964;

(e) attorney's fees and costs, reasonably calculated, incurred with this lawsuit with interest thereon; and

(f) other damages and further relief as this Court deems just.

## **JURY DEMAND**

The Plaintiff requests a trial by jury.

                                        Respectfully Submitted,

                                        Chinyere U. Nwoke


                                 By:_____
                                   Ebere N. Ekechukwu, Esq.
                                     Leroy U. Ekechukwu

Ebere N. Ekechukwu, Esq. #6243587
Leroy U. Ekechukwu, #6322500
EBERE N. EKECHUKWU & ASSOCIATES, P.C.
53 West Jackson Boulevard, Suite 1440
Chicago, Illinois 60604
(312) 362-9844
e-mails:   ebere@eberelaw.com
            leroy@ekelawgroup.com

13

Case: 1:16-cv-09153 Document #: 1 Filed: 09/22/16 Page 13 of 13 PageID #:13